# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION
# CASE NUMBER:

| | |
|---|---|
| Nationwide Mutual Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Elijah Stanton Adkins and Laura Mellichamp,<br><br>Defendants. | 3:25-cv-00829-MGL<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br>**(Non-Jury)** |

Plaintiff Nationwide Mutual Insurance Company (hereinafter "Nationwide") seeks declaratory relief to determine the rights of the parties, and alleges and shows as follows:

## JURISDICTION & VENUE

1. Nationwide is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio and is authorized to conduct business in South Carolina.

2. Upon information and belief, Defendant Elijah Stanton Adkins is a resident of and domiciled in Richland County in the State of South Carolina.

3. Upon information and belief, Defendant Laura Mellichamp is a resident of and domiciled in Richland County in the State of South Carolina.

4. This action is brought under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. and Rule 57, Fed. R. Civ. P.; there is a real and justiciable controversy between the parties, and by these proceedings Plaintiff asks this Court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

5. The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of

citizenship; therefore, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332(a)(1).

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because one or more Defendants reside in this District and Division and a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

## FACTUAL ALLEGATIONS

7. Nationwide issued a homeowners policy, Policy No. 61 39 HR 008934, to Elijah S. Adkins and Ellen Adkins effective from June 13, 2024, to June 13, 2025 (the "Primary Policy"). The Primary Policy includes Coverage E – Personal Liability Coverage with a limit of $300,000 for each occurrence for property damage and bodily injury. The Primary Policy also includes Coverage F – Medical Payments To Others with a $1,000 each person limit. A copy of the Policy is attached hereto as Exhibit A.

8. Nationwide also issued a Personal Umbrella Liability Policy, Policy No. 6139PU352437, to Elijah S. Adkins effective from September 30, 2023 to September 30, 2024 ("Umbrella Policy"). The Umbrella Policy includes excess personal liability limits of $1,000,000 each occurrence. A copy of the Policy is attached hereto as Exhibit B.

9. The Primary Policy provides in pertinent part:

**DEFINITIONS**

5. "Business" means:

    a. A trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis; or

    b. Any other activity engaged in for money or other compensation except the following:

***

2

11. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

***

## SECTION II – LIABILITY COVERAGES

A. **Coverage E – Personal Liability**

   If a claim is made or a suit is brought against an "insured" for damages due to an "occurrence" resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property, we will:

   1. Pay up to our limit of liability for damages for which an "insured" is legally liable. . . and

   2. Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

***

## SECTION II – EXCLUSIONS

***

E. **Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

   Coverages **E** and **F** do not apply to the following:

   1. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

      a. Is of a different kind, quality or degree than initially expected or intended; or

3

      b. Is sustained by a different person, entity or property than initially expected or intended.

    However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

  **2. Criminal Acts**

    "Bodily injury" or "property damage" caused by or resulting from an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime;

  **3. "Business"**

    a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    This Exclusion **E.3.** applies but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

***

**F. Coverage E – Personal Liability**

  Coverage E does not apply to:

***

  **7.** Liability for any of the following:

    **a.** Judgments;

    **b.** Costs;

    **c.** Attorney fees; or

    **d.** Claims;

4

against an "insured" for punitive or exemplary damages. Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages. In addition, coverage does not apply for restitution, if the result of a criminal court order.

11. The Umbrella Policy provides in pertinent part:

**DEFINITIONS**

\*\*\*

**9.** "Business" means:

   a. A trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

\*\*\*

**14.** "Occurrence(s)" means an accident, including continuous or repeated exposure to the same general harmful conditions. It must result in "bodily injury", "property damage", or "personal injury" caused by an "insured". The "occurrence" resulting in "bodily injury" or "property damage" must be during the policy period. The "occurrence" resulting in the "personal injury" must be due to an offense committed during the policy period.

\*\*\*

**COVERAGES**

**EXCESS LIABILITY INSURANCE**

We will pay for damages an "insured" is legally obligated to pay due to an "occurrence" in excess of:

1. The "retained limit"; plus

5

2. Any other liability insurance available to an "insured" which applies to an "occurrence".

The "bodily injury" or "property damage" must occur during this policy's term. The "personal injury" must be due to an offense committed during this policy's term.

***

**ADDITIONAL COVERAGES**

**1. CLAIMS DEFENSE**

    **a.** We will defend a suit against an "insured", with attorneys of our choice, resulting from an "occurrence" covered by this policy.

    This applies even if the suit is groundless, false or fraudulent. However, we will not defend the "insured":

    **(1)** If the "occurrence" is covered by the required underlying insurance or other insurance the "insured" has, unless such coverage is exhausted by payments; or

***

**EXCLUSIONS**

Excess liability and additional coverages do not apply to:

**1.** "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

    **a.** Is of a different kind, quality or degree than initially expected or intended; or

    **b.** Is sustained by a different person, entity or property than initially expected or intended.

    However, this Exclusion **(1.)** does not apply to:

    **(1)** "Bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property; or

    **(2)** "Bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to prevent

or eliminate danger in the operation of "autos", "recreational motor vehicles" or watercraft;

\*\*\*

**6.** "Bodily injury", "personal injury" or "property damage" arising out of or in connection with a "business":

   **a.** Engaged in by an "insured"; or

\*\*\*

This exclusion **(6.)** applies but is not limited to an act or omission, regardless of its nature of circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."

\*\*\*

**24.** Any of the following:

   a. Judgments;

   b. Costs;

   c. Attorney fees; or

   d. Claims;

against an "insured" for punitive or exemplary damages. Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages. In addition, coverage does not apply for restitution, if the result of a criminal court order.

12. On December 21, 2024, Laura Mellichamp ("Mellichamp") filed a Summons and Complaint in the South Carolina Court of Common Pleas, Richland County, against Elijah Stanton Adkins ("Dr. Adkins"), Civil Action No. 2024-CP-40-07444 ("First Complaint"). A copy of the First Complaint is attached hereto as Exhibit C.

13. On January 3, 2025, Mellichamp voluntarily dismissed the First Complaint.

14. On January 3, 2025, Mellichamp filed suit a second Summons and Complaint in the South Carolina Court of Common Pleas, Richland County, against Dr. Adkins, Civil Action No. 2025-CP-40-00038 (the "Second Action" or "Second Complaint"). A copy of the Second Complaint is attached hereto as Exhibit D.

15. The First Complaint asserted causes of action for Assault and Battery and Negligence, and the Second Complaint alleges a cause of action for Negligence.

16. Both the First Complaint and the Second Complaint allege the same incident, which took place on the morning of September 25, 2025 at Prisma Health Hospital.

17. Mellichamp alleges Dr. Adkins was a pediatric surgeon and Mellichamp was a nurse at Prisma Health.

18. Mellichamp alleges both she and Dr. Adkins "were present at Prisma Health Hospital to perform their regular job duties."

19. Mellichamp alleges that, as she walked past Dr. Adkins on Prisma Health premises, Dr. Adkins "began yelling at [Mellichamp] for not having a face mask covering her face. He did so without provocation from [Mellichamp] and with knowledge that it was common practice for face masks not to be worn in that area of the hospital."

20. Mellichamp alleges Dr. Adkins yelled at her with a "harsh tone directed towards" Mellichamp.

21. The First Complaint alleged: "After continuing to increase his tone and aggression towards Plaintiff, Defendant quickly turned around to face Plaintiff and without provocation from Plaintiff, aggressively and angrily hit Plaintiff in the face with an open hand."

22. The Second Complaint alleged: "After continuing to increase his tone and aggression towards Plaintiff, Defendant quickly turned around to face Plaintiff and without provocation from Plaintiff, struck Plaintiff."

23. Both Complaints allege that the "force of the hit was so hard that it was heard by other staff members who were not in the area where it occurred" and that witnesses were "stunned by Defendant's actions."

24. Dr. Adkins is seeking coverage from Nationwide for the claims asserted in the Second Complaint and has tendered the underlying lawsuits to Nationwide for a defense.

25. Nationwide is currently defending Dr. Adkins in the Second Action under a reservation of rights.

26. A dispute exists between Nationwide and Dr. Adkins as to whether Nationwide owes a duty to defend and indemnify under the Primary and/or Umbrella policies for claims arising out of the incident alleged in the First and Second Complaint.

**FOR A FIRST DECLARATION**

27. Nationwide repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

28. The Primary Policy provides Nationwide will defend a suit and provide coverage for personal liability where "a claim is made or suit is brought against an 'insured' for damages due to an 'occurrence' resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property . . . ."

29. The Primary Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'property damage.'"

9

30. The Umbrella Policy provides excess liability coverage for "damages an 'insured' is legally obligated to pay due to an 'occurrence' in excess of" other applicable liability insurance.

31. The Umbrella Policy provides Nationwide will defend a suit against an insured that results from an "occurrence" covered by the policy.

32. The Umbrella Policy defines "occurrence" as "an accident including continuous or repeated exposure to the same general harmful conditions" that results in "bodily injury."

33. The incident alleged in the Second Complaint does not constitute an "occurrence" as defined in the policies.

34. Therefore, Nationwide is entitled to declarations that the Primary Policy does not provide personal liability coverage, the Umbrella Policy does not provide excess coverage, and Nationwide has no duty under either policy to defend or indemnify Dr. Adkins with respect to the claims alleged in the Second Complaint.

## FOR A SECOND DECLARATION

35. Nationwide repeats and re-alleges paragraphs above as if set forth fully verbatim below.

36. The Primary Policy and Umbrella Policy exclude coverage for "'bodily injury' or 'property damage' which is expected or intended by an 'insured', even if the resulting 'bodily injury' or 'property damage': a. Is of a different kind, quality or degree than initially expected or intended; or b. Is sustained by a different person, entity or property than initially expected or intended."

37. The incident alleged in the First and Second Complaint – the intentional and slapping of Plaintiff in the face in anger – describes conduct for which Dr. Adkins expected or intended bodily injury.

38. Therefore, the expected or intended injury exclusion applies, and Nationwide is entitled to declarations that the Primary Policy does not provide personal liability coverage, the Umbrella Policy does not provide excess coverage, and Nationwide has no duty under either policy to defend or indemnify Dr. Adkins with respect to the claims alleged in the Second Complaint.

## FOR A THIRD DECLARATION

39. Nationwide repeats and re-alleges paragraphs set out above as if set forth fully verbatim below.

40. The Primary Policy excludes coverage for "'bodily injury' or 'property damage' caused by or resulting from an act or omission that is criminal in nature and committed by an 'insured'. This exclusion applies regardless of whether the 'insured' is actually charged with or convicted of a crime."

41. South Carolina Code Section 16-3-600(E)(1) provides: "[a] person commits the offense of assault and battery in the third degree if the person unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so."

42. The incident alleged in the First and Second Complaint – striking Plaintiff in the face without provocation – constitutes assault and battery in the third degree as defined by the statute.

43. Therefore, the criminal acts exclusion applies, and Nationwide is entitled to declarations that its Primary Policy does not provide personal liability coverage and Nationwide

has no duty to defend or indemnify Dr. Adkins with respect to the claims alleged in the Second Complaint.

## FOR A FOURTH DECLARATION

44.     Nationwide repeats and re-alleges paragraphs set out above as if set forth fully verbatim below.

45.     The Primary Policy excludes coverage for "'[b]odily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured'."

46.     The Umbrella Policy excludes coverage for "bodily injury" that arises out of or is in connection with a "business" engaged in by the insured.

47.     The Primary Policy and Umbrella Policy both define a "business" as a "trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis . . . ."

48.     Dr. Adkins' full-time profession or occupation was as a pediatric surgeon at Prisma Health.

49.     The Second Complaint alleges Dr. Adkins and Mellichamp were "present at Prisma Health Hospital to perform their regular job duties."

50.     Upon information and belief, the incident occurred while Dr. Adkins and Mellichamp were discussing the wearing of face masks in the hospital while they worked and in connection with their work.

51. Upon information and belief, Mellichamp had worked with and/or for Dr. Adkins before, and Dr. Adkins was speaking to Plaintiff in connection with his role as a surgeon at Prisma Health during the altercation.

52. Upon information and belief, Mellichamps' alleged injuries arose out of or were in connection with Dr. Adkins' business as a pediatric surgeon at Prisma Health.

53. Therefore, the business exclusion applies, and Nationwide is entitled to declarations that its Primary Policy does not provide personal liability coverage, its Umbrella Policy does not provide excess coverage, and Nationwide has no duty under either policy to defend or indemnify Dr. Adkins with respect to the claims alleged in the Second Complaint.

## FOR A FIFTH DECLARATION

54. Nationwide repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

55. The Primary Policy and Umbrella Policy do not provide coverage for punitive or exemplary damages.

56. The Second Complaint seeks punitive damages.

57. Therefore, Nationwide is entitled to declarations that its Primary Policy and Umbrella Policy do not provide personal liability coverage or excess coverage, respectively, for any punitive damages alleged in the Second Complaint.

**WHEREFORE**, Nationwide respectfully requests that this Court inquire into these matters and declare that the Nationwide Primary Policy and Umbrella Policy do not provide coverage for the claims and damages alleged in the Second Complaint and that Nationwide has no obligation to pay, indemnify, defend, or otherwise perform under the Primary Policy or the

Umbrella Policy for any such claims, together with such other and further relief as the Court may deem just and proper.

              MURPHY & GRANTLAND, P.A.

              s/Wesley B. Sawyer
              Wesley B. Sawyer, Esq. (Fed. I.D. No.: 11244)
              P.O. Box 6648
              Columbia, South Carolina 29260
              Phone: (803) 782-4100
              wsawyer@murphygrantland.com
              Attorney for Plaintiff Nationwide Mutual
              Insurance Company

Columbia, South Carolina
February 12, 2025